UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARK BARBIERI,                          :
                            Plaintiff,  :        MEMORANDUM OF DECISION
                                        :
        -against-                       :        05-CV-04950 (ENV) (MDG)
                                        :
K-SEA TRANSPORTATION CORP., K-SEA       :
OPERATING PARTNERSHIP, L.P., K-SEA      :
TRANSPORTATION, L.L.C., and THE DBL-31, in :
rem,                                    :
                            Defendants. :
-----------------------------------------------------------------x
VITALIANO, D.J.

        Plaintiff Mark Barbieri filed the instant action on October 24, 2005, seeking

damages from defendants K-Sea Transportation Corp., K-Sea Operating Partnership, L.P., K-Sea

Transportation, L.L.C., and The DBL-31 (collectively, "K-Sea") for the injuries he sustained

working as the captain of K-Sea's petroleum barge, the DBL-31. In response, K-Sea served a

demand for arbitration pursuant to the Claims Arbitration Agreement signed by Barbieri on April

30, 2003 (the "Claims Arbitration Agreement" or the "Agreement") and the rules of the

American Arbitration Association ("AAA"). Thereafter, in its November 28, 2005 answer to

Barbieri's original complaint, K-Sea also asserted, as its First Affirmative Defense, that this

litigation should be stayed or barred pending arbitration in New York.

        On December 28, 2005, K-Sea filed a motion to compel arbitration and to grant

parallel relief staying this litigation pending the outcome of the arbitration. Barbieri responded

with a cross-motion to strike K-Sea's First Affirmative Defense, arguing, in essence, that the

Claims Arbitration Agreement was invalid and unenforceable. Having determined that there

were disputed issues of material fact as to the enforceability of the contract that, if proven, could

render the Claims Arbitration Agreement invalid under 9 U.S.C. § 2., by Memorandum and

Order, dated December 18, 2006, the Court ordered a trial on the issue of the enforceability of

Claims Arbitration Agreement. <u>Barbieri v. K-Sea Transp. Corp.</u>, No. 05-CV-04950 (ENV) (MDG), 2006 WL 3751215 (E.D.N.Y. Dec. 19, 2006).

The trial was held on April 8, 2008 before the Court sitting without a jury. Having heard the testimony of the witnesses, reviewed the documentary exhibits received in evidence, and considered the arguments of counsel, this Memorandum of Decision, pursuant to Federal Rule of Civil Procedure 52, constitutes the Court's findings of fact and conclusions of law.

## Findings of Fact

As made manifest at the trial, the operative facts are, in essential part, not contested.

Barbieri, a seaman by trade, was employed by K-Sea as the captain of its petroleum barge, the DBL-31, from 1999 through 2004.[1] While working on the deck of the DBL-31 on March 9, 2003, Barbieri alleges that he sustained serious injuries to his lower back and other parts of his body as a result of the negligence of defendants and the unsafe and unseaworthy condition of the vessel. On March 12, 2003, Barbieri was transported from the barge, then moored at Stapleton Anchorage in Upper New York Bay, to St. Vincent's Hospital on Staten Island for treatment of these injuries. He returned to his home in Cairo, New York upon his release from the hospital on March 14, 2003. Pursuant to the collective bargaining agreement then in effect between K-Sea and Barbieri's union, Local 333 United Marine Division, K-Sea began paying Barbieri $15 per day for maintenance. K-Sea also provided Barbieri with one or two rounds of settlement advances, as was its custom.

---

[1] K-Sea's predecessor company was Eklof Marine Corporation. For purposes of this Memorandum of Decision, all references to K-Sea include Eklof Marine Corporation during the time of its operation.

Later that month, while recuperating at home, Barbieri received a phone call from Alton Peralta, the claims manager for K-Sea. During this conversation, Peralta stated that if Barbieri signed an agreement to arbitrate all claims arising out of his injuries, K-Sea would pay Barbieri, in addition to the $15 per day maintenance payment required by the collective bargaining agreement, two-thirds of his average net weekly wage as an advance against settlement. Peralta informed Barbieri that he was under no duty to accept this offer and that he would continue to receive the $15 per day minimum maintenance payment as well as cure regardless of whether he signed the agreement. Peralta also informed Barbieri that if he signed the agreement to arbitrate it would be a legally enforceable contract. Barbieri acknowledged at the time that he realized that he had a right to sue in court to recover damages and that if he signed the agreement he would be giving up his right to sue in court and be limited to arbitration of his damage claims. According to Barbieri's testimony, at the time of this conversation, he was concerned about his injury, but believed that he would eventually return to work.

Following their conversation, Peralta mailed Barbieri the Claims Arbitration Agreement with a short cover letter, dated March 21, 2003. The cover letter explained: "arbitration is a private process, and the outcome will be decided by one or more arbitrators, not by a jury." The letter also informed Barbieri, in bold letters: "You are not obligated to sign the Agreement. You will continue to receive $15/day as maintenance, and medical cure at the Company's expense until you are fit for duty and/or reach maximum medical improvement, whether you sign the Agreement or not."

While Barbieri had a serious decision to make, he also testified that none of the discussions with K-Sea leading up to his decision came at a time when he was otherwise vulnerable or extraordinarily susceptible to pressure. No discussion regarding a waiver of a

3

judicial forum, he says, ever took place on the barge or during his transportation to the hospital for treatment and recuperation. Barbieri testified that he was coherent and capable of understanding the agreement at the time he signed it. He also testified at trial that he signed it voluntarily without any threat, duress, or coercion of any kind from K-Sea. In fact, Barbieri testified that during the period after he had received the proposed Claims Arbitration Agreement from K-Sea and the time he signed it, he had no discussions with anyone at K-Sea regarding the agreement; no one had lied to him about the terms of the agreement, he says, or suggested that he not consult with a lawyer. In short, there is not even a hint that Barbieri's decision to sign the Claims Arbitration Agreement, to forego a judicial forum in favor of an arbitral one, was the product of anything other than his own calculus as to what, at that time, given the promise of an advancement against his claims required by neither law nor contract, was in his own best interest and the best interest of his family.

On April 30, 2003, Barbieri signed the Claims Arbitration Agreement. In relevant part, the Agreement provided:

> It is the position of K-Sea that K-Sea is responsible only for maintenance and cure and is not responsible or liable for any other damages under the doctrine of unseaworthiness, Jones Act or any other applicable law. Nonetheless, K-Sea is prepared to make advance against the settlement of any claim that could arise under the doctrine of unseaworthiness, Jones Act, or any other applicable law provided Mark Barbieri agrees to arbitrate these claims.

> Therefore, in consideration of Mark Barbieri agreeing to arbitrate all claims against K-Sea and its affiliated and subsidiary companies, arising under the theories of unseaworthiness, Jones Act or any other applicable law in New York under the Commercial Arbitration Rules of the American Arbitration Association (AAA), K-Sea agrees to pay Mark Barbieri his average two-thirds net weekly wage as an advance against settlement until he has been declared fit for duty and/or at maximum medical improvement.

4

The agreement further provided that "[a]ny filing fee, up to $750.00 and any deposit for compensation of the arbitrators shall be advanced by K-Sea, subject to subsequent allocation." Finally, the Claims Arbitration Agreement contained, immediately above the signature line, the following paragraph printed in bold type: "Other than the promises contained in this agreement, I have been given no other promises to induce me to sign this Claims Arbitration Agreement. There has been no coercion used to make me sign this agreement. I have signed this agreement knowingly and willingly." There is also no dispute that, thereafter, K-Sea continued making payments in accordance with the Agreement, at least with respect to Barbieri's base wage.

In July 2004, Barbieri was informed by K-Sea that he had reached maximum medical improvement and that it would not continue his employment. Nevertheless, K-Sea continued to pay Barbieri settlement advances and maintenance through March 2005. In total, K-Sea paid Barbieri $45,700.01 in settlement advance and $11,130 in maintenance.

His waiver of judicial forum notwithstanding, Barbieri filed the instant action in October 2005. In response, K-Sea filed a demand for arbitration with the AAA and sent the AAA a check for $750. In the letter sent to the AAA and copied to Barbieri's counsel, K-Sea stated that "pursuant to the [Claims Arbitration A]greement, the remainder of the filing fee is to be provided by Barbieri." Neither the demand nor the letter specified what this fee would be.

Under the "Commercial Arbitration Rules and Mediation Procedures" of the AAA, filing fees are determined as follows:

| Amount of Claim | Initial Filing Fee |
| --- | --- |
| Above $0 to $10,000 | $750 |
| Above $10,000 to $75,000 | $950 |
| Above $75,000 to $150,000 | $1,800 |
| Above $150,000 to $300,000 | $2,750 |

| Above $300,000 to $500,000 | $4,250 |
|---|---|
| Above $500,000 to $1,000,000 | $6,000 |
| Above $1,000,000 to $5,000,000 | $8,000 |
| Above $5,000,000 to $10,000,000 | $10,000 |

Where, as here, no claim has been specified, the total filing fee would amount to $10,000.

According to the testimony of K-Sea's management, they understood that the filing fee for a claimant would be $750 and possibly a little higher, but did not have a specific understanding that a claimant who made a demand without a stated amount would cause the filing fee to significantly increase. It was not K-Sea's intent to effectively strip Barbieri of all forums by securing agreement on an arbitral forum that he could not afford, which is evidenced by the $750 advance to pay the filing fee. In light of the unintended circumstance of a significantly higher required fee and as a means to resolve any issues that the filing fee has created in this case, K-Sea has agreed to advance Barbieri the filing fee.

**Discussion of the Law**

1. Burden of Proof

As an initial matter, Barbieri suggests that, because seamen are wards of the admiralty, a contract between a seaman and his employer should be treated the same as, for example, a contract between a young heir and his guardian, *i.e.*, that such a contract is invalid unless it is shown to be fair to the seaman and untainted by deception, duress or any other factor that might bar its enforcement in equity. This "ward of the admiralty" doctrine is explained in Garrett v. Moore McCormack Co., 317 U.S. 239, 246-47 (1942):

> [Seamen] are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to

treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. * * * If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that protanto the bargain ought to be set aside as inequitable. * * * And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.

Id. (quoting Harden v. Gordon, 11 F. Cas. 480, 485 (No. 6,047) (CC Me 1823)). Under the ward

of the admiralty doctrine, "the burden is upon one who sets up a seaman's release to show that it

was executed freely, without deception or coercion and that it was made by the seaman with full

understanding of his rights." Id. at 248. Barbieri contends that the Court should analyze the

enforceability of the Agreement as it is required to do by the Federal Arbitration Act (the

"FAA"), 9 U.S.C. §§ 1-16, through the prism of the Garrett framework.

K-Sea, on the other hand, argues that Barbieri's reliance on Garrett is misplaced

because that case involved a seaman's release of claim, whereas this case involves an agreement

to arbitrate the claim. Then by leap of words, but not necessarily of logic, K-Sea argues that the

"ward of the admiralty" doctrine does not apply because such an agreement to arbitrate is

governed exclusively by the FAA, giving apparent short shrift to a court's solicitude for seamen

in its admiralty jurisdiction.

There is, nevertheless, no necessary conflict between the solicitude owed by the

Court to a seaman as a ward of its admiralty jurisdiction, Barbieri, 2006 WL 3751215, at *8 n.9,

and the argument that the "ward of the admiralty" doctrine does not shift the burden of proof

from the party challenging an agreement to arbitrate to the party seeking enforcement of the

agreement. That, in fact, is precisely what New York's highest state court has held when it considered this question in virtually an identical context. In Schreiber v. K-Sea Transportation Corporation, 9 N.Y.3d 331, 879 N.E.2d 733, 849 N.Y.S.2d 194 (2007), the New York Court of Appeals held that the ward of the admiralty doctrine does not shift the burden of proof in cases concerning the enforceability of an arbitration agreement. Id.; see also In re Weeks Marine, Inc., 242 S.W.3d 849 (Tex. App. 2007) (rejecting the argument that the ward of the admiralty doctrine shifts the burden to the employer to sustain an arbitration agreement). As succinctly explained by the Schreiber court, the FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and, under the FAA, the burden is on the party challenging the enforceability of the agreement to show the grounds for its revocation. Schreiber, 9 N.Y.3d at 340, 879 N.E.2d at 738, 849 N.Y.S.2d at 199. "That burden is not shifted simply because the objecting party is a seaman." Id.; see also Endriss v. Eklof Marine Corp., No. 96 Civ. 3137 (KMW), 1998 WL 1085911 (S.D.N.Y. July 28, 1998) (applying FAA in compelling arbitration between seaman and his employer); Garza Nunez v. Weeks Marine, Inc., No. 06-3777, 2007 WL 496855, at *8 n.15 (E.D. La. Feb. 13, 2007) (in determining the validity of the arbitration agreement, holding that "the burden in Garrett concerned a burden of sustaining release of claims . . . release of claims is not an issue here"). This Court concurs. An agreement to arbitrate is not a release of any claim, and, therefore, does not fall under the rubric of Garrett or its progeny. Moreover, and what the countervailing arguments here on the "ward of the admiralty" issue seem to overlook, arbitration is not a penalty. The availability of arbitration only expands the avenues of redress open to the "ward of the admiralty." See Barbieri, 2006 WL

8

3751215, at *8 n.9. Once chosen, the rules of travel on the chosen avenue control. Accordingly, the Court will apply the traditional burdens of proof of federal law on the validity of an arbitration agreement, which, under Section 2 of the FAA, still permits the Court's solicitude for its admiralty ward as it considers all legal and equitable defenses Barbieri might have to the enforceability of the Agreement.

2. Is the Claims Arbitration Agreement Enforceable Against Barbieri

The FAA reflects a legislative recognition of "the desirability of arbitration as an alternative to the complications of litigation." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (quoting Wilko v. Swan, 346 U.S. 427, 431 (1953)). "[R]eversing centuries of judicial hostility to arbitration agreements," Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 (1974), the Act "was designed to allow parties to avoid the costliness and delays of litigation and to place arbitration agreements upon the same footing as other contracts," Genesco, 815 F.2d at 844 (internal quotation omitted). The FAA thus establishes a clear and unequivocal presumption in favor of arbitration and requires that courts "rigorously enforce agreements to arbitrate." Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 30 (2d Cir. 2001). To achieve these goals, the Act provides that written provisions to arbitrate controversies "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section three of the Act provides for a stay of judicial proceedings where the court is satisfied that the issue before it is arbitrable under the agreement. Section four directs a federal court to compel arbitration if there has been a "failure, neglect, or refusal of any party to honor an agreement to arbitrate." Scherk, 417 U.S. at 511. "These provisions are mandatory: 'by its terms, the Act leaves no place for the exercise of discretion by

9

a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Genesco, 815 F.2d at 845 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

A party resisting arbitration "may attack directly the validity of the agreement to arbitrate . . . [and] may attempt to make a showing that . . . the agreement was affected by fraud, undue influence, or overweening bargaining power; that enforcement would be unreasonable and unjust; or that proceedings in the contractual forum will be so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 632 (1985) (internal quotations omitted). In determining the enforceability of arbitration agreements, courts apply generally accepted principles of contract law. Genesco, 815 F.2d at 845. "State law, whether of legislative or judicial origin, is applicable . . . to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).

There is no dispute that Barbieri expressly agreed to arbitrate this claim with K-Sea concerning the injuries he sustained while working on the barge. Nor is there any dispute in the evidence that Barbieri was clear-headed when he signed the Agreement and that he read and understood the contract that he had signed. Nonetheless, Barbieri challenges the enforceability of the Agreement on the grounds that: (1) he was not represented by counsel when he signed the Agreement; (2) he did not have the correct understanding of "two-thirds net wage"[2]; (3) he received two weeks of "advances" immediately after his injury, before being informed that he

---

[2]  Specifically, Barbieri contends that he understood the agreement that he would receive two-thirds net wages as including two-thirds of his base pay and overtime. In practice, Barbieri only received two-thirds of his base pay.

would only be receiving maintenance and cure unless he signed the Agreement; and (5) he did not understand that he would have to pay the AAA filing fee and that he agreed to pay for a filing fee without extracting any like benefit from K-Sea.

Most of Barbieri's arguments are insubstantial. First, while Barbieri may have been better served had he been represented by counsel, there was no evidence at trial that he was unable to properly evaluate and understand the agreement. See Mildworm v. Ashcroft, 200 F. Supp. 2d 171, 176 (E.D.N.Y. 2002) ("a person who signs a contract is presumed to know its contents and to assent to them" (quoting Berger v. Cantor Fitzgerald, 976 F. Supp. 91, 93 (S.D.N.Y. 1997)). To the contrary, the testimony established that Barbieri is college educated, has been involved in a business venture in the past, has had prior experience with the legal system, and has had at least one prior injury claim. By his testimony, including demeanor, Barbieri displayed the mental capacity both to enter into a contractual agreement knowingly and voluntarily as well as to decide whether or not he should consult counsel before doing so. Second, there is no evidence that Barbieri was purposefully misled, coerced, threatened or intimidated into signing the Agreement. The divergent understandings between Barbieri and K-Sea regarding the definition of "net pay" appears to have been nothing other than a misunderstanding between the parties, which had and has absolutely no bearing on the ultimate resolution of his undiminished claim in arbitration. Finally, the two weeks advanced settlement payments do not, by any stretch, constitute undue influence or economic coercion of any kind. Nor would the discontinuance of such payments amount to coercion. Under the collective bargaining agreement, Barbieri was entitled only to maintenance and cure. K-Sea, effectively, offered the advance in exchange for Barbieri's agreement to an arbitral forum, period. The agreement did not require Barbieri to give up a penny of his claim—only the right to choose between the two forums of equal standing afforded him by the Jones Act. Had the arrangement

11

required Barbieri to forfeit any portion of his claim, for example, overtime compensation not included in the advanced payment, then such a deal would be in the nature of a release and Garrett and the "ward of the admiralty" doctrine would command at least a different analysis if not a different result.

The undisclosed parameters of the AAA filing fee, on the other hand, is more troubling. But, this issue is not one of first impression either. It too was covered in the New York Court of Appeals' Schreiber decision. Again, Schreiber involved the same defendant and nearly identical facts as present in this case. There, the Court of Appeals held: "If K-Sea expected the fee to be so far in excess of the one mentioned in the agreement—and so far in excess of what most seamen can afford—a factfinder might conclude that K-Sea deceived [plaintiff] into signing." Schreiber, 9 N.Y.3d at 340-41, 879 N.E.2d at 739, 849 N.Y.S.2d at 200. The Court thus held that "[i]f [the lower court] finds that K-Sea intentionally misled [plaintiff], and that if correctly informed he would not have agreed to arbitration, the arbitration agreement should be set aside." Id.

Applying that standard here, Barbieri still has failed to demonstrate at trial that the Claims Arbitration Agreement should be set aside. Barbieri has made no showing that K-Sea intentionally misled him, or that it acted in bad faith when negotiating the contract. In fact, both Peralta and K-Sea's Vice President of Administration, Richard Falcinelli, testified that they did not know what the AAA filing fee would be at the time K-Sea extended its offer to Barbieri. Barbieri also has failed to demonstrate that it would be prohibitively expensive for him to arbitrate. It is well settled that the party seeking to invalidate an arbitration agreement on the basis of prohibitive expenses bears the "burden of showing the likelihood of incurring such costs." Green Tree Financial Corp. of Alabama v. Randolph, 531 U.S. 79, 92 (2000). Given the trial record before this Court, it is not possible to know with any degree of certainty what

Barbieri's arbitration costs might be. For example, under the AAA Rules, "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." Moreover, depending on the merits of Barbieri's claim, his costs may be awarded to him, in whole or in part. In short, Barbieri has demonstrated at best only a "risk" that he will be saddled with high AAA fees. The mere risk of prohibitive costs is too speculative to require invalidation of an arbitration clause. See Green Tree Financial Corp., 531 U.S. at 91 ("The 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."); Valdes v. Swift Transp. Co., Inc., 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (holding that plaintiff's claim of prohibitive cost was "especially speculative in light of Section 38 of the AAA Rules, which provides for administrative fees to be 'deferred or reduced' in the event of 'extreme hardship'").

Nonetheless, the Court remains concerned that Barbieri will essentially be precluded from pursuing his remedies in arbitration because of the cost. Particularly since Barbieri is a ward of the Court's admiralty jurisdiction but also because the dispute tried to the Court is equitable in nature—K-Sea is seeking specific performance of a contract—the Court can equitably condition its order of performance. The order need not require enslavement to each and every provision of a contract; equity allows modification of conditions to facilitate achievement of the contract's essential purpose. See McFarland v. Gregory, 322 F.2d 737, 739 (2d Cir. 1963) ("In framing [] a decree [of specific performance] the performance that [the court] requires need not be identical with that promised in the contract.").

Here, the essential agreement was the advance of payments by a maritime employer on a claim of damages for maritime injury in exchange for the injured party's assent to forego a jury trial and agree to arbitration. K-Sea has substantially performed its part of that bargain; Barbieri should do likewise. Equity requires only that Barbieri be ordered to do so on

13

reasonable terms rather than the jot and tittle of the terms specified in the Claims Arbitration Agreement.

Even K-Sea recognizes the magnitude of the problem and the need for the Court to condition equitably any order directing arbitration. To that end, K-Sea offers to advance Barbieri's share of the cost of arbitration.

The Court believes still more is required. Barbieri "should not be compelled to bear costs which would effectively preclude him from pursuing his claim." Schreiber, 9 N.Y.3d at 341, 879 N.E.2d at 739, 849 N.Y.S.2d at 200. Accordingly, the Court will compel arbitration but only on the condition that K-Sea bears any filing costs not waived by the AAA.

## Conclusion

In accord with the findings of fact and conclusions of law incorporated in this Memorandum of Decision, K-Sea's motions to compel arbitration and stay this litigation are granted on condition and Barbieri's motion to strike K-Sea's first affirmative defense is denied.

The clerk is directed to close this case administratively, but it may be restored to the docket should K-Sea reject the Court's condition of its order or, following the conclusion of arbitration, upon the motion of any party for the entry of any necessary order.

SO ORDERED.

Dated: Brooklyn, New York
      July 23, 2008

                                                  s/ENV

                                      ERIC N. VITALIANO
                                      United States District Judge